## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**JOHNNY HUGHES,**

**Petitioner,**

**v.**

**RANDY PFISTER, Warden,**

**Respondent**.

Case No. 17 cv 02171

Judge Mary M. Rowland

## MEMORANDUM OPINION & ORDER

Johnny Hughes filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his conviction for murder and attempted armed robbery. His original petition brought eight claims. (Dkt. 1). In an earlier ruling, the Court dismissed seven of the claims and ordered further briefing on the remaining claim. (Dkt. 16). For the reasons that follow, Hughes's petition [1] is denied as to the remaining claim, and no certificate of appealability shall issue.

## BACKGROUND

The Court presumes familiarity with the facts based on its prior ruling and thus provides a truncated factual background. On June 12, 2001, Alex Bradley was shot and killed in his backyard. Police quickly learned that Johnny Hughes and Arnold Elliot might have been involved in the murder. When police located and pulled over Hughes's car, they found Leon Tanna driving. Tanna was arrested on an unrelated outstanding warrant and told officers that Hughes was detained in Jasper,

1

Indiana. On June 27, 2001, assistant state's attorney Iris Ferosie and two detectives traveled to Jasper to interview Hughes about Bradley's murder. Hughes did not testify at his trial and his statements were not recorded, so the description of the conversation that occurred at the jail is based on Ferosie's trial testimony.

The detectives spoke with Hughes for approximately twenty minutes before Ferosie entered the interview room. Ferosie testified that, upon joining the detectives, she advised Hughes of his *Miranda* rights and asked if he was willing to speak with her. He agreed. Hughes said that he and Elliot snorted heroin and smoked crack cocaine while driving around and, as a result, he did not recall the events of the night well. He recounted attempting to sell merchandise to Bradley.

Ferosie testified that Hughes told her that both he and Elliot had approached Bradley in his backyard. After they unsuccessfully tried to sell the merchandise to Bradley, Hughes walked away and heard a gunshot. He could not provide more specific details, telling Ferosie: "Listen, I was high, you know, I don't really remember exactly." (Dkt. 10, Ex. R, 34). After Ferosie pressed him further, Hughes responded: "You know what? That's my story. I'm done talking." (*Id.* at 35). Ferosie and the detectives then left the room.

Shortly thereafter, Hughes wanted to talk to Ferosie again. Ferosie testified that when she returned to the interview room Hughes told her, "I'm going to tell you the truth now." (Dkt. 10, Ex. R, 34). According to Ferosie, she re-advised him of his *Miranda* rights, Hughes said he understood his rights, and then Hughes provided a different account of Bradley's murder. Hughes affirmed that he spent the night using

2

drugs, but said he and Elliot were going to "do a lick," meaning they would rob someone. (*Id.* at 37). Hughes and Elliot drove around all night but were unable to find anyone to rob, so they decided to sell merchandise to Bradley. Hughes told Ferosie that when they approached Bradley, Hughes was holding a gun. Bradley did not want to buy Hughes's items, which made Hughes angry. Hughes pointed the gun at Bradley and began to search Bradley's pockets for money. Bradley pushed Hughes away which caused the gun to fire. Hughes and Elliot then fled. Hughes said that he told a friend, Leon Tanna, about the murder.

At the end of the conversation, Ferosie asked Hughes to memorialize his statement. Ferosie testified that Hughes did not trust video recordings or a court reporter and did not want to write his own statement. He was also unwilling to provide any further statements unless Ferosie could promise him a deal. Ferosie said she was unable to do so, so Hughes refused to speak with her any further.

On July 3, Ferosie met with Tanna who was detained at the Cook County Jail. Ferosie testified that Tanna told her about a conversation in which Hughes described shooting Bradley as the result of a "reflex." (Dkt. 10, Ex. R, 49-50). Ferosie documented Tanna's statement, which he signed to indicate his acceptance. Tanna later testified to the same effect before the grand jury. At trial, however, Tanna testified that he had been coerced by the police into making a statement to Ferosie while in custody, and again before the grand jury. During his trial testimony, Tanna said he did not recall a conversation in which Hughes admitted to shooting Bradley.

3

At trial, the government also provided testimony from Elliot, who claimed that Hughes left his line of sight, Elliot then heard a gunshot, and Hughes returned saying the gun went off when Bradley tried to grab Hughes. The government also provided testimony from a forensic investigator who stated that Hughes's fingerprint was on the bag of merchandise, which was left in Bradley's backyard.

Following a jury trial, Hughes was convicted of first degree murder and attempted armed robbery. He was sentenced to concurrent prison terms of fifty-five years for murder and ten years for armed robbery. The Illinois Appellate Court affirmed Hughes's conviction but remanded for resentencing based on an error in his attempted robbery conviction. *People v. Hughes*, No. 1-03-1898, slip op. at 28-29 (Ill. App. Feb. 2, 2005). He petitioned for leave to appeal ("PLA") to the Illinois Supreme Court which was rejected. (Dkt. 10, Ex. E, 30).

On May 17, 2006, Hughes filed a petition for post-conviction relief. (Dkt. 10, Ex. S). With the petition, Hughes filed an affidavit in which he stated that he never waived his *Miranda* rights during his interrogation at the Indiana jail and refused to answer questions. Hughes stated that Ferosie nonetheless persisted in interrogating him, and he responded by pulling his shirt over his head and putting his head on the table. The post-conviction petition contended that Hughes's trial counsel had been ineffective in failing to move to suppress his confession. The trial court dismissed Hughes's petition, and he appealed. The state appellate court held that any error the trial attorney made in failing to move to suppress the confession was not prejudicial, as the confession did not "tip the scales against the defendant" in the jury's

4

determination of guilt given the other evidence implicating Hughes, the absence of testimony "exonerating [Hughes] as the shooter," and "the lack of any contrary evidence" on that point. *People v. Hughes*, 2016 IL App (1st) 131199-U, ¶ 119. Hughes filed a PLA which the Illinois Supreme Court denied. (Dkt. 10, Ex. O, 158).

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a federal court may not grant habeas relief unless the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). But just because a federal court independently concludes that the relevant state court decision applied clearly established law erroneously does not mean that the court may grant the writ; rather, the state court's application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 155 L. Ed. 24 144 (2003).

To receive habeas relief on the merits of an ineffective assistance of counsel claim, Hughes must meet the performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 647 (1984). Under *Strickland*, Hughes must show that (1) his attorney's performance fell below an objective standard of reasonableness and (2) he was prejudiced by that deficient performance. *Id.* at 687-88. To satisfy the second element, Hughes must demonstrate

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Overall, judicial review of trial counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689; *see also United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011). On habeas review, the inquiry is doubly deferential: not only must the Court presume that "the challenged action might be considered sound trial strategy," *Strickland*, 466 U.S. at 689 (internal quotation marks omitted), but under AEDPA this Court must also defer to the state court's application of *Strickland* unless it is objectively unreasonable. *See Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

## ANALYSIS

Hughes filed a habeas petition in this Court asserting eight claims. On August 15, 2019, the Court dismissed claims 1–7 and ordered further briefing on the eighth claim, an ineffective assistance of counsel claim. [1] (Dkt. 16). Hughes argues that trial counsel was ineffective for failing to argue that his confession should be suppressed due to a *Mosley* violation.[2] Hughes contends that the Illinois Appellate Court unreasonably applied *Strickland* in concluding that he did not suffer prejudice from his attorney's purported error. The Court addressed the merits of this claim in its

[1] In its response brief, Respondent argues that Hughes's "memorandum makes no argument at all with respect to Claims 1–7." (Dkt. 25, 3). It is unclear to the Court why Respondent would make such an argument; both Hughes and Respondent were instructed to only provide further briefing on claim 8, not on any of the previously dismissed claims. (Dkt. 16, 15-16). The Court expects counsel to review the docket and previous rulings before submitting a legal brief.

[2] A *Mosley* violation occurs if a prosecutor "failed to honor the decision of a person in custody to cut off questioning, either by refusing to discontinue interrogation upon requested or by persisting in repeated efforts to wear down his resistance and make him change his mind." *Michigan v. Mosley*, 423 U.S. 96, 105-06 (1975).

6

earlier ruling, noting several problems with the state court analysis and requesting further briefing on the threshold issue of whether Hughes told his counsel about the *Mosley* violation. The relevant portions of that ruling are as follows:

> One potential problem in the state appellate court's analysis of the prejudice issue lies in its determination that admission of Hughes's confession did not "tip the scales" in the jury's determination of guilt. Whether a particular item of evidence "tips the scales" is not the question that *Strickland* requires a court to decide. Rather, the issue is whether there is a "probability" of a different result that is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The Court acknowledges, as respondent argues, that the Seventh Circuit has held that "a single reference to 'tipping the scales' does not demonstrate" that the state court applied a standard contrary to *Strickland*, *Allen v. Chandler*, 555 F.3d 596, 601 (7th Cir. 2009). But here the question is not whether the state court's decision ran afoul of the "contrary to" standard under 28 U.S.C. § 2254(d)(1) … but whether the state appellate court made an "unreasonable application" of the *Strickland* standard. In that regard, the court's use of this vague untethered standard does not provide much comfort that it was applying *Strickland* reasonably.
>
> …And more generally, the evidence aside from Hughes's confession that implicated him was not terribly more compelling than the evidence that inculpated Elliot…Elliot pointed the finger at Hughes, but the reliability of that testimony is tempered to some extent given his obvious interest in deflecting any implication of his own guilt. And Tanna's grand jury testimony against Hughes, the only other evidence pointing toward Hughes and away from Elliot, was rendered less compelling by Tanna's recantation of that testimony at trial. All of this suggests a reasonable probability of a different outcome had Hughes's confession been excluded.

(Dkt. 16, 13-14). The Court thus determined that the Illinois Appellate Court's application of *Strickland*'s prejudice prong was likely unreasonable.

The Court next turned to *Strickland*'s performance prong. Noting that Hughes's post-conviction petition did not contain any evidence that Hughes made his counsel aware of his alleged invocation, the Court requested further briefing on

whether Hughes informed his attorney of the *Mosley* violation.[3] The Court reasoned: "Without such evidence, there would not appear to have been any basis in the record for the state court to determine that counsel's performance fell below *Strickland's* objective reasonableness standard: if counsel were never made aware of the *Mosley* violation, how could they have acted ineffectively by failing to file a motion to suppress?" (Dkt. 16, 15).

Unfortunately, neither party provided responsive briefing as the Court requested. Hughes merely filed his opening brief from his post-conviction appeal (Dkt. 26) and a short reply letter (Dkt. 31), stating that Hughes has made a *Strickland* showing. As noted above, the post-conviction petition and its attached affidavit contain no indication that Hughes informed his counsel about the *Mosley* violation. His opening brief from his post-conviction appeal similarly fails to address whether Hughes informed his counsel about the *Mosley* violation. Hughes failed to provide the Court with additional briefing, and did not provide additional evidence or an additional affidavit in support of his claim. Although the Court found the state court's prejudice reasoning to be "untethered" (Dkt. 16, 13), Hughes has not made the threshold showing (despite being given a second opportunity) that he informed his counsel about the alleged violation. He thus has not met *Strickland's* performance prong. Accordingly, Hughes's ineffective assistance of counsel claim fails and his petition must be denied.

---

[3] The state appellate court noted this potential issue as well, but declined to address it given its determination that Hughes was not prejudiced. *People v. Hughes*, 2016 IL App (1st) 131188-U, ¶¶ 109-10.

**C. Certificate of Appealability**

If Hughes wishes to appeal this denial, he must first obtain a certificate of appealability. 28 U.S.C.§ 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.§ 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal quotation marks and citations omitted). The Court has already determined that a certificate of appealability should not issue for claims 1-7. (Dkt. 16, 15-16). For the reasons discussed above, a certificate of appealability should not issue for claim 8. Hughes has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should have been resolved differently, nor would they determine that Hughes deserves encouragement to proceed further on his habeas claims. The Court declines to issue a certificate of appealability.

<u>**CONCLUSION**</u>

For the reasons discussed above, Hughes's remaining claim is dismissed and his habeas petition [1] is denied. No certificate of appealability shall issue. The Clerk is instructed to enter judgment in favor of Respondent and against Petitioner.

E N T E R:

Dated: May 26, 2020

_____
MARY M. ROWLAND
United States District Judge